FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD v. BROWN COUNTY AND JOHN STALEY, TREASURER.

1.  Revenue in Unorganized Counties.  Brown county was created in March, 1883, being attached to Holt county under the general statute for election, judicial, and revenue purposes.  In June, 1883, the county commissioners of Holt county levied state, county, and school taxes upon the property in Brown county.  In July, 1883, an election was had for county officers, and officers elected, who qualified and entered upon the duties of their office. In April, 1884, the F., E. & Mo. V. R'y Co. paid to the treasurer of Holt county the taxes levied by the county commissioners of that county on the railroad in Brown county; *Held,* That the taxes should have been paid to the treasurer of Brown county.

2.  New Counties:  ORGANIZATION.  Upon the organization of a new county, and the election and qualification of its officers, the ligament which bound to the county to which it was attached for election, judicial, and revenue purposes is severed, and all business must thereafter be transacted with the new county.

ORIGINAL application for injunction.

*H. C. Brome* and *Joy, Wright & Hudson,* for plaintiff.

*William H. Munger,* for defendants.

MAXWELL, J.

This is an action to restrain the treasurer of Brown county from collecting from the plaintiff certain taxes levied

by the commissioners of Holt county on the property of the plaintiff in Brown county, in the year 1883. The cause is submitted on the following stipulation:

It is hereby stipulated and agreed by and between the above named parties that the above cause be submitted to the court upon the following statement of facts and conditions:

1. That plaintiff is a corporation duly organized and incorporated under the laws of the state of Nebraska, owning and operating a line of railroad from Fremont, in the state of Nebraska, north-west through the counties of Dodge, Cuming, Stanton, Madison, Antelope, Holt, and Brown, in said state, with a road-bed, tracks, side tracks, depots, right of way, bridges, and such other property necessary and used in the construction and use of said railroad, and plaintiff was such a corporation and owned said railroad at the various times hereinafter mentioned.

2. That the county of Holt, in said state of Nebraska, is a corporation duly organized and created under and in pursuance of the laws of said state, and was such corporation at the various times hereinafter mentioned.

3. That the defendant, the county of Brown, is now one of the counties of said state organized under and by virtue of the provisions of the act of the legislature of the state of Nebraska, which took effect September, 1873, entitled "An act to provide for the organization of new counties, and to locate the county seats thereof," and amendments thereto, and found in article II., chapter 17, of part I., of the Compiled Statutes of Nebraska. That said county of Brown did not become permanently organized until the 23d day of July, 1883, and the officers elected at the first election therein did not qualify until the 7th day of August, 1883.

That in pursuance of said act of said legislature last aforesaid, the governor of the state of Nebraska, on the 18th day of March, 1883, appointed commissioners to call

an election in said county for the purpose of electing county officers in said county and determining the location of the county seat therein.    That said election was called by said commissioners and held on the 19th day of July, 1883, and the same was the first election ever held in said county, and the votes cast at said election were canvassed on the 23d day of July, 1883, and the officers elected at said election did not qualify until the 7th day of August, 1883.    That the defendant  John N. Staley is now the treasurer of said county of Brown.

4.    That the boundaries of what is now the county of Brown were fixed by an act of the legislative assembly of the state of Nebraska in the year 1883, which took effect February 19, 1883, and all of said territory included in said boundaries by said act was named and entitled the county of Brown.

5.    That said territory embraced and included in said county of Brown, as now organized, was situated directly west of said county of Holt, said county of Holt being in the year 1883, and for several years prior thereto, duly organized ; the said territory now embraced in said county of Brown was by virtue of the laws of the state of Nebraska attached to the county of Holt for election, judicial, and revenue purposes, and the county authorities of said county of Holt, under the provisions of said statute, exercised control over, and their jurisdiction extended to all the territory embraced in what was afterwards Brown county.

6.    That under and by virtue of the provisions of the act of the legislature of the state of Nebraska, approved March 1, 1879, found in Compiled Statutes of Nebraska, in article I. of chapter 77, part I., the proper accounting officers of plaintiff, on or about April 7, 1883, listed and returned to the auditor of public accounts of said state for assessment and taxation the property of said plaintiff, as provided by section 39 of said statute, which report and return showed the number of miles of said railroad in each

organized county of the state, and the total number of miles of its railroad in the territory which now comprises the county of Brown. That said return disclosed that said company had 57.36 miles of railroad in the county of Holt, then organized, and that it then had in the territory which has since become (but not then organized) the county of Brown 51.70 miles of said road.

That in pursuance of the provisions of section 40 of said statute last aforesaid, after said return was made by the plaintiff to the auditor of public accounts, the state board of equalization of said state of Nebraska returned and assessed the value per mile of said railroad of plaintiff so returned to said auditor; and on or before the 15th day of May, 1883, the said auditor certified to the clerk of said county of Holt the assessment per mile of said state board on said railroad, and the said mileage of said railroad in Holt county and in said territory which now comprises the county of Brown, and said assessment of said railroad in Holt and in the territory now comprising the county of Brown was received by said county clerk of Holt county from said state authorities for taxation, the said territory embraced in what is now the county of Brown being then still attached to Holt county for revenue purposes.

7. That the county commissioners of the county of Holt, on the 14th day of June, 1883, and while said county of Brown was still attached to said county of Holt for revenue purposes and unorganized, duly levied taxes upon all of the taxable property in said county of Holt, and upon all of the taxable property included in said territory which now comprises the county of Brown, including taxes upon the assessment made by said state board upon plaintiff's railroad in said county of Holt and in said territory now comprising the county of Brown; and all assessments made for said year 1883, upon all property for taxation in Holt county and in the territory now embraced in the county of Brown (excepting the plaintiff's said railroad assessed by

said state board) were made by assessors elected or appointed in said Holt county. That the said county commissioners of the county of Holt, in making said levy of taxes for the year 1883, levied a state tax of $6\frac{7}{8}$ mills, a county tax of 14 mills, and school taxes (certified up to the county clerk of Holt county by the several district boards) upon the assessed valuation of the plaintiff's road in Holt county, and in the territory attached thereto as Brown county, as well as on all other taxable property therein.

That the total taxes thus levied by the county commissioners of Holt county on the assessed valuation of plaintiff's railroad in said territory now comprising the county of Brown amounted to the sum of $7,141.01.

That the said taxes thus levied by the commissioners of Holt county on the plaintiff's railroad in the territory now embraced in Brown county were carried out on the tax books of Holt county against said plaintiff's property, and the same delivered to the treasurer of said Holt county for collection as by law provided, with the warrant thereto signed by the county clerk of said county, commanding the treasurer of said county of Holt to collect the same as by law provided.

8. That on or about the 24th day of April, 1884, the said taxes so levied by the county of Holt on the plaintiff's said property in the county of Holt and in the territory now comprising the county of Brown being due, and said tax list being in the hands of the treasurer of said Holt county for collection, the plaintiff paid into the treasurer of Holt county on said day, in good faith, but with notice of the permanent organization of said Brown county, said taxes so levied against the said railroad in Holt county and in said territory now embraced in the county of Brown, and paid all taxes assessed and levied on its property for the year in said territory aforesaid, and received a receipt from said treasurer of Holt county therefor.

9. That the county authorities of Brown county never

at any time levied any taxes whatever upon any property in said county of Brown for the year 1883, and never levied any tax for said year on said railroad of plaintiff in said county of Brown, and said county of Brown was not organized at the time when by law the counties in said state of Nebraska are required to levy the taxes, but the taxes on all the property subject to taxation in said territory now comprising the county of Brown were levied by the proper authorities of Holt county.

10. That immediately after the permanent organization of said Brown county, and in the month of August or September, 1883, the county clerk of said county of Brown obtained from the tax books of Holt county a transcript of the said tax list or tax roll for said year 1883 of the taxable property within said Brown county, including the said property and railroad of this plaintiff, and filed the same in the office of the treasurer of said county; the said tax list being the taxes levied and carried out on plaintiff's property by the county authorities of Holt county aforesaid. And said transcript of said tax lists so obtained by said county clerk of Brown county from said Holt county is claimed by said Brown county to have been done under section 13, article II., chapter 17, part I., page 172, Compiled Statutes of Nebraska.

The foregoing are the facts with regard to the matters therein stated and agreed to as such by the parties to this action, and in addition thereto the plaintiff claims:

That the county of Brown never made any claim or asserted any right to any tax upon plaintiff's said railroad for said year 1883 before plaintiff paid the same to said county of Holt, but on the contrary disclaimed any right to receive or collect the same from plaintiff before plaintiff paid said taxes to said county of Holt, and the plaintiff paid said taxes without any knowledge or notice of any claim thereto on the part of said Brown county.

Which proposition defendants deny. And it is agreed

by the parties hereto that if the court shall be of the opinion that said statement of facts as last above stated, and to which said parties do not agree, is material to a proper determination of this case, then the said parties may take evidence in the manner of taking depositions upon said question, and the truth of said statement be determined by the court from such evidence, said depositions to be taken within such time as the parties shall agree upon or the court direct.

The said parties, from the foregoing facts, submit for the judgment of the court the following:

*First.* Did the taxes levied by Holt county upon the property of the plaintiff within the territory now comprising the county of Brown for the year 1883, belong to the revenue of Brown county?

*Second.* If so, did the payment of said taxes in full by plaintiff to the treasurer of Holt county on the 24th day of April, 1884, discharge plaintiff's liability for said taxes to Brown county?

*Third.* Under the agreed facts is plaintiff now liable to said Brown county for said taxes of 1883, levied as above stated and paid by plaintiff to Holt county?

FREMONT, ELKHORN & MO. VALLEY R. R. Co.

By JOY, WRIGHT & HUDSON, *Attorneys.*

W. H. MUNGER, *Attorney for Brown County.*

Section 146 of chapter 18, Comp. St., provides that, "all counties which have not been organized in the manner provided by law, or any unorganized territory in the state, shall be attached to the nearest organized county directly east for election, judicial, and revenue purposes," etc.

Section 147 provides that, "the county authorities to which any unorganized county or territory is attached shall exercise control over, and their jurisdiction shall extend to, such unorganized county or territory the same as if it were a part of their own county."

Section 1, Art. II. of Chap. 17, provides that, "when it shall be made to appear by the affidavit of three resident freeholders in any one of the unorganized counties of this state that such county contains a population of not less than two hundred inhabitants, and ten or more of such in-habitants being tax payers, may by memorial petition the governor to appoint three persons therein mentioned to act as special county commissioners, and one person by them named to act as special clerk for such county, and shall also name some place centrally located in the county for a temporary county seat, whereupon it shall be the duty of the governor to appoint and commission the persons so named for special county officers, and shall by appoint-ment under his hand and seal declare the said place the temporary county seat of said county."

The second section requires the officers thus appointed to take an oath. The third requires the commissioners to divide the county into precincts, and to fix the time and places where an election will be held, and cause notices thereof to be given—the notices to specify the places of voting. The fourth section provides the mode of conduct-ing the election. The fifth to the twelfth, inclusive, relate to the county seat. The thirteenth section provides that, "whenever any county organized under the provisions of this chapter shall have been previously attached to any other county for election, judicial, and revenue purposes, it shall be the duty of the county clerk chosen at the first election, after having qualified according to law, to procure from the proper officer of such county a transcript of all deeds, mortgages, judgments, and liens of *every description* upon real or personal property lying and being in such newly organized county, and cause the same to be recorded in the proper offices of his own county; such clerk shall be at full liberty to take such transcripts himself, and when recorded in the proper office in his own county shall stand headed with the name of the county and offices where taken,

and a certificate.attached thereto that' they are correct, and such clerk shall receive for his services ten cents per folio for taking such transcripts, ten cents per folio for recording them, and ten cents per mile in going after and returning with them, which shall be audited, allowed, and paid to him by his own county.

Section fourteen provides, " that county and precinct officers elected at the first election as herein provided shall continue to hold their respective offices until the next general election held for the same offices in other counties, as provided by the election law in force at that time, and until their successors are elected and qualified." The third section provides for the election of county and ,precinct officers.

It will thus be seen that the attachment of an unorganized county to one that is organized for election, judicial, and revenue purposes is merely of a temporary character, nor need the relation continue longer than sufficient time to organize after the unorganized county contains two hundred inhabitants and ten tax payers. The unorganized county does not become a part of the organized one but for certain purposes therein named is placed under its care.

The object evidently was to protect life and property in the unorganized county and prevent a failure of justice. For the purposes named in the statute—election, judicial, and revenue, the organized becomes as it were a trustee for the unorganized, and this relation continues until the proper officers are elected and have qualified in the new county—in other words, until the unorganized county becomes organized and the officers elected at the first election have taken the oath and given the security required by the statute. The new county then has provided the machinery for county government and put the same in motion. It is now able to transact its own business, and it would seem both unjust and unreasonable to deny it and its citizens the right. Being an organized county the ligament that

bound it to the former county is severed by the force of the organization, and it takes its place as one of the counties of the state, and its officers become amenable to the law for the faithful performance of their duty. The county clerk of the new county is to obtain "a transcript of all deeds, mortgages, judgments, and liens of every description upon real or personal estate lying or being in such newly organized county." While this language in terms, perhaps, does not include tax liens, yet we think they were intended to be included, otherwise it would have been unnecessary to provide for the election of a county treasurer. Why provide a treasurer if the tax rolls are not to be placed in his possession and the revenue collected and disbursed by him upon warrants properly drawn? It is evident, therefore, that the transcripts referred to include the property assessed and taxes levied in the new county. This being so, after the organization of the new county is complete and its officers have qualified, all taxes due to it are to be paid to its treasurer, and a payment to the treasurer of the county to which it was formerly attached is not a payment to it. The fact that the taxes were levied by the commissioners of the former county under a special power, gives that county no authority to collect such taxes if in the meantime such special power has ceased, as the object of the statute is not to enable the organized to make the unorganized a source of revenue.

It is clear, therefore, that upon the organization of Brown county and the qualification of its officers, that it became an organized county and the special authority of the county officers of Holt county ceased. A payment, therefore, after that date to the treasurer of Holt county of taxes due to Brown county for 1883 upon property lying therein, was not a payment to Brown county and not a valid payment of said taxes. Such taxes being paid under a mistake, in justice should be repaid to the plaintiff or offset against other taxes due from the plaintiff. But that question is

not in this case. The injunction must be denied, and the treasurer of Brown county permitted to collect from the plaintiff the taxes in question.

JUDGMENT ACCORDINGLY.

THE other judges concur.